UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
NADIA JALAL THOMPSON,                )
                                     )
                              Plaintiff,   )   No. C11-0120RSL
                                     )
      v.                             )   ORDER GRANTING DEFENDANTS'
                                     )   MOTION FOR SUMMARY
TRIDENT SEAFOODS CORP., *et al.*,    )   JUDGMENT
                                     )
                            Defendants.  )
_____)

        This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 47. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient:" the opposing party must present probative evidence in support

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

**A. Sex Discrimination Claim Under Title VII**

Employees who wish to file suit against their employer under Title VII of the Civil Rights Act of 1964 are ordinarily required to exhaust their administrative remedies by, inter alia, filing a charge with the Equal Employment Opportunity Commission ("EEOC"). See Lyons v. England, 307 F.3d 1092, 1104 (9th Cir. 2002) ("To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim." (citation omitted)); Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990). "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" Green v. Los Angeles Cty. Superintendent of Schools, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (quoting Brown v. Puget Sound Elec. Apprent. & Training Trust, 732 F.2d 726, 729 (9th Cir. 1984)).

---

[1] This matter can be decided on the papers submitted. Defendants' request for oral argument is DENIED.

The Court has not considered statements in the memoranda and declarations that are not based on the declarant's personal knowledge or that constitute inadmissible hearsay. Nor has the Court considered statements in the memoranda that are not supported by admissible evidence. The Court has, however, considered the exhibits attached to plaintiff's response memorandum despite the lack of authenticating declaration, with the exception of Exhibit G (which is inadmissible pursuant to RCW 50.32.097).

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT    -2-

Plaintiff failed to exhaust her administrative remedies regarding her underlying claim of sexual discrimination. Her June 19, 2009, EEOC charge alleges that she and another woman complained of sexual harassment in 2008, that the ship's captain was removed as a result of that complaint, and that she was subsequently removed from the M/V Independence "in retaliation for the sexual harassment complaint." Decl. of Greg Hendershott (Dkt. # 49), Ex. G. As plaintiff herself recognizes, "[a] simple reading of the EEOC complaint shows that my charge was directly related to the retaliation for reporting sexual harassment to the employer." Response (Dkt. # 53) at 17. The facts involving the 2008 sexual harassment claim were presented only as background for the retaliation charge: there is no indication that plaintiff ever contended before the EEOC that defendants' response to the discrimination complaint was inappropriate or ineffective. Decl. of Greg Hendershott (Dkt. # 49), Exs. G and H. Having failed to include the sexual harassment claim in her EEOC charge, plaintiff may not pursue that claim in federal court.

**B. Retaliation Under Title VII and the Washington Law Against Discrimination**

To establish a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the two. Wallis v. J.R. Simplot Co., 26 F.3d 885, 891 (9th Cir. 1994). "Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) (citations omitted). "Because Washington courts look to interpretations of federal law when analyzing retaliation claims, we . . . consider [plaintiff's] federal and state claims together." Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002) (citing Graves v. Dept. of Game, 76 Wn. App. 705 (1994)).

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                    -3-

### 1. *Prima Facie* Case of Retaliation

Defendants do not dispute that plaintiff engaged in protected activity when she lodged her sexual harassment complaint on February 29, 2008.  With regards to the adverse employment element, "an action is cognizable as an adverse employment action [in the context of a retaliation claim] if it is reasonably likely to deter employees from engaging in protected activity."  Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).  This definition of an adverse employment action is considerably broader than the one used when evaluating an intentional discrimination claim.  Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 965 (9th Cir. 2004).  For purposes of this motion, the Court assumes that a transfer to the purser position on the Alaska Packer would constitute an adverse employment action.

The existence of a causal connection is less clear.  Plaintiff alleges that Victor Scheibert, a vessel manager for defendant Trident Seafoods, terminated her employment in September 2008 because she had complained of sexual harassment seven months before.  This allegation is based on (a) Scheibert's awareness that plaintiff had mentioned him in her sexual harassment complaint and (b) the temporal relationship between the events.  Although plaintiff surmises that Scheibert must have known that she accused him of not taking sufficient steps to remedy the sexual harassment she and other women were experiencing, she provides no supporting evidence.  The vice president of human resources to whom plaintiff complained states that he did not share the written complaint with Scheibert or tell him that he had been mentioned in it.  Decl. of Joe Misenti (Dkt. # 48) at ¶ 10.  Similarly, Scheibert states that he did not know of his supposed role in the harassment until plaintiff filed this lawsuit.  Decl. of Victor Scheibert (Dkt. # 50) at ¶ 7.  Absent some evidence that Scheibert was aware that he had been implicated in plaintiff's accusations, there is no basis on which to infer the necessary causal link.

Contrary to defendants' argument, however, an inference of causation can arise based on the timing of the protected activity and the subsequent adverse employment action. See Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000).

Taking the evidence in the light most favorable to plaintiff, it appears that plaintiff worked for defendants for a number of years without incident and without complaint. When plaintiff lodged her sexual harassment complaint on February 28, 2008, it was with some concern regarding the possibility of reprisals. Decl. of Joe Misenti (Dkt. # 48), Ex. B. Within months, she had been told that her employment with Trident Seafoods was terminated. Although the inference of causation raised by this temporal relationship is rather weak, it is enough to establish a *prima facie* case of retaliation.

**2. Legitimate Reasons for the Adverse Employment Action**

Defendants argue that it terminated[2] plaintiff's employment because she was being supervised by her husband, Dan Thompson, and the situation was causing problems on the vessel. At least two employees (the vessel's captain and medical officer) reported that having both plaintiff and Dan on board was causing conflict, affecting morale, and negatively impacting the working environment on board. Decl. of Victor Scheibert (Dkt. # 50) at ¶ 12; Decl. of Joe Misenti (Dkt. # 48), Ex. E. See also Decl. of Greg Hendershott (Dkt. # 49), Ex. E (Captain Bishop's statement to EEOC that "he thought Dan and [plaintiff] were controlling the whole boat . . . . [S]he would tell people what to do. She wasn't in that position – she wasn't a mgr. But she had a lot of control. She'd tell Dan what to do as it related to the boat and other [employees]. This caused problems on the boat."). Scheibert eventually concluded that plaintiff and her husband were "tag-teaming" employees and that plaintiff was exercising authority she did not possess, apparently because she felt protected based on her relationship with the production superintendent. Scheibert decided to terminate her employment at the end of the 2008 B season. When plaintiff asked to work one more season on the M/V Independence, Scheibert agreed and ultimately offered her another purser position on the Alaska Packer.

---

[2] Although defendants maintains that Scheibert intended to transfer, not terminate, plaintiff, there is a dispute regarding what Scheibert told plaintiff when he first informed her that she could not continue working on board the M/V Independence. The Court assumes, for purposes of this motion, that plaintiff was originally informed that her employment would be terminated.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                -5-

Plaintiff declined the Alaska Packer position.

Defendants have identified legitimate, non-retaliatory reasons for the termination/ transfer.

### 3. Evidence of Pretext

Plaintiff's only response to defendants' explanation for the adverse employment action is to assert that the complaints regarding her performance on the job were manufactured as part of a coordinated effort to drive her from defendants' employ in retaliation for her sexual harassment complaint. As evidence, plaintiff argues that Scheibert was unhappy about being mentioned in her February 2008 complaint and cites the deposition testimony of Deane Schultz, the medical officer on board the M/V Independence.

As discussed above, there is no evidence that Scheibert knew that plaintiff had implicated him in her February 2008 complaint until this litigation was filed. Plaintiff's reliance on the Schultz deposition for the proposition that the vice president of human resources, Joe Misenti, "asked Schultz to report back to him problems with me and/or my behavior" is also unavailing. Response (Dkt. # 53) at 22. The deposition transcript shows only that plaintiff tried to get Schultz to acknowledge some grand scheme to spy on plaintiff. Schultz made no such admission. Rather, the witness simply says that when he became concerned about how plaintiff's behavior was impacting the crew, he contacted Misenti because Misenti had interviewed Schultz regarding plaintiff's sex discrimination claims during the spring.

Plaintiff's speculation regarding a conspiracy in which all of the individuals who complained about her were lying in order to curry favor with their employer while all of the co-workers who would otherwise support her interpretation of events were afraid to come forward cannot take the place of the probative evidence necessary to raise a genuine issue of fact regarding retaliatory intent. Because plaintiff has not provided evidence from which a reasonable factfinder could conclude that the reason for the adverse employment action advanced by the employer was a pretext, her retaliation claims cannot proceed beyond the

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                -6-

summary judgment stage.

For all of the foregoing reasons, defendants' motion for summary judgment regarding plaintiff's discrimination and retaliation claims (Dkt. # 47) is GRANTED. Plaintiff recently amended her complaint to add a new claim related to defendants' alleged failure to cooperate with the EEOC investigation. Dkt. # 64. The viability of that claim will be considered in connection with defendants' pending motion to dismiss. Dkt. # 67.

Dated this 16th day of April, 2012.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT            -7-